# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### VICTORIA DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| **Plaintiff/Respondent,** | § | |
| | § | **CRIMINAL NO. 6:12-81** |
| **v.** | § | **CIVIL NO. 6:14-73** |
| | § | |
| **GABRIEL TRIFU,** | § | |
| **Defendant/Movant.** | § | |

## MEMORANDUM OPINION & ORDER

Pending before the Court is Defendant/Movant Gabriel Trifu's ("Movant") motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 81).[1] The United States of America (the "Government") filed a motion for summary judgment (D.E. 93), to which Movant responded (D.E. 94, 95).

## I.  Background

On September 23, 2013, a jury found Movant guilty of 33 counts of wire fraud in violation of 18 U.S.C. § 1343. The Probation Department thereafter prepared Movant's Presentence Investigation Report (PSR), which summarized the offense conduct as follows:

> Online advertisements were posted for various items for sale, including cars, motorcycles, and food carts from an internet protocol (IP) address in Romania. The items were listed on ebay, Craigslist, and other online auction or classified ad sites. Unknown persons, who were located in Romania, identified themselves as a soldier in the United States military who would soon be deployed to Iraq or Afghanistan and needed to sell these items quickly. The victims received emails that appeared to originate from ebay and the victims were told in the email that ebay would act as the third-party custodian in the transaction. The email stated ebay would handle payment and/or shipping for the item. The fraudulent ebay email contained instructions on how and to whom the victim would wire payment for the item. Once the funds were wired, the victims would not receive any further correspondence. Trifu would pick up the money wired by the victims using fraudulent passports. Trifu was arrested on a federal warrant on November 15, 2012.

---

1.  All citations to the docket sheet refer to Criminal Case No. 6:12-81.

PSR, D.E. 67, ¶ 6. Investigators identified 223 victims in Texas, Alabama, and Mississippi, and the total value of the fraud was calculated to be $562,239.78.

The PSR also calculated Movant's offense level and criminal history points. The base offense level for a violation of 18 U.S.C. § 1343 is 7. U.S.S.G. § 2B1.1(a)(1). The PSR recommended that Movant be held responsible for a total loss amount of $562,239.78, which resulted in a 14-level increase under U.S.S.G. § 2B1.1(b)(1)(H). Because the offense involved 223 victims, the PSR added 4 more levels under U.S.S.G. § 2B1.1(b)(2)(B). The PSR further recommended that 2 more levels be added under U.S.S.G. § 2B1.1(b)(10)(A) because Movant had "relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials, a substantial part of the fraudulent scheme was committed from outside the United States, and the offense involved sophisticated means."

Movant had two prior convictions in California for driving under the influence: one in 2008 and one in 2012. For the 2008 conviction, Movant received a 3-year term of probation. For the 2012 conviction, he received a 90-day term of confinement in the custody of the county jail. Because Movant committed the latter offense while he was on probation, his probation for the 2008 offense was revoked, and the court imposed a 90-day term of imprisonment. These convictions netted Movant 4 criminal history points under U.S.S.G. § 4A1.2(b), which placed him in criminal history category III.

The Court considered defense counsel's written and oral objections to the PSR at sentencing, but ultimately adopted the PSR without change. A total offense level of 27 and a criminal history category of III established an advisory guideline imprisonment range of 87 to 108 months. The Court determined that a sentence of one year off the highest end of the guideline was appropriate and sentenced Movant to serve 33 concurrent 96-month terms of imprisonment, to be followed by 33 concurrent 3-year terms of supervised release. Movant was

also ordered to pay the mandatory assessment of $3300.00 and $562,239.78 in restitution. Judgment was entered on December 11, 2013 and became final 14 days later, the last day Movant could have filed a notice of appeal.

Movant filed the instant § 2255 motion on December 3, 2014.[2] It is timely.

## II.  Movant's Claims

Movant complains that trial counsel rendered ineffective assistance because he: (1) failed to object to the application of a 14-level enhancement based on the amount of loss caused by the offense; and (2) failed to object to Movant's erroneously-calculated criminal history score.

## III. Legal Standards

### A.  Grounds for Filing a § 2255 Motion

There are four cognizable grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) constitutional issues, (2) challenges to the district court's jurisdiction to impose the sentence, (3) challenges to the length of a sentence in excess of the statutory maximum, and (4) claims that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

### B. Ineffective Assistance of Counsel

Generally, an ineffective assistance claim presented in a § 2255 motion is properly analyzed under the two-prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Willis*, 273 F.3d 592, 598 (5th Cir. 2001). To prevail on a claim of

---

2. Movant's motion is dated December 3, 2014. D.E. 81, p. 14. Under the "mailbox rule," the date of filing for *pro se* prisoners is set to the date the inmate places the legal paper in the hands of prison officials for mailing. *Spotville v. Cain,* 149 F.3d 374, 376–78 (5th Cir. 1998).

3

ineffective assistance of counsel, a movant must demonstrate that his counsel's performance was both deficient and prejudicial. *Id.* This means that a movant must show that counsel's performance was outside the broad range of what is considered reasonable assistance and that this deficient performance led to an unfair and unreliable conviction and sentence. *United States v. Dovalina*, 262 F.3d 472, 474–75 (5th Cir. 2001). If the movant fails to prove one prong, it is not necessary to analyze the other. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) ("A court need not address both components of the inquiry if the defendant makes an insufficient showing on one"); *Carter v. Johnson*, 131 F.3d 452, 463 (5th Cir. 1997) ("Failure to prove either deficient performance or actual prejudice is fatal to an ineffective assistance claim.").

With regard to ineffective assistance of counsel claims affecting sentencing, the prejudice prong of the *Strickland* standard is satisfied if the movant shows that counsel's deficient performance resulted in any amount of prison time above what the movant would have received if the forfeited complaint had been advanced at trial or on appeal. *United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004).

## III. Analysis

### A. Ground 1: Failure to object to 14-level enhancement based on the amount of loss caused by the offense

Movant complains that counsel was ineffective because he failed to object to the 14-level enhancement based on the amount of loss caused by his criminal conduct. The record reflects that trial counsel lodged objections to the probation officer's recommended amount of loss. *See* Objections to PSR, D.E. 64; *see also* 12/3/2013 Sent. Tr., D.E. 89, 4:10-22. Counsel's performance was therefore not deficient.

**B. Ground 2: Failure to object to erroneously-calculated criminal history score**

Movant further complains that counsel was ineffective for failing to object to the calculation of his criminal history score. As set forth *supra*, Movant received a 90-day term of imprisonment for his 2012 DUI conviction. At sentencing, he was given credit for time served. After Movant's 2012 DUI conviction, his 3-year sentence of probation for his 2008 DUI conviction was revoked, and he was sentenced to a 90-day term of imprisonment. Movant was also given credit for time served on his sentence for the 2008 DUI conviction.

In calculating a defendant's criminal history score, the Sentencing Guidelines instruct the Court to:

> (a) Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
> (b) Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
> (c) Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.

§ 4A1.1(a)–(c). "In the case of a prior revocation of probation," the Guidelines instruct the Court to "add the original term of imprisonment to any term of imprisonment imposed upon revocation. The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable." U.S.S.G. § 4A1.2(k).

The PSR assessed Movant two criminal history points for each DUI conviction under U.S.S.G. § 4A1.2(b) based on the 90-day sentences he received for each conviction. This placed Movant in criminal history category III. Movant complains that he should have only received one criminal history point for each of his prior convictions under U.S.S.G. § 4A1.1(c) because his combined sentence for the two convictions was only 90 days, and neither conviction resulted in a sentence of more than 60 days. According to Movant, a total of two criminal history points would have placed him in category I.

5

Movant is mistaken for a number of reasons. First, two criminal history points would place him in criminal history category II, not I. Movant's new advisory guideline range under category II would be 78–97 months, and his sentence of 96 months would still fall within this advisory guideline range. Second, his sentences in the 2008 and 2012 cases are not "combined" for purposes of calculating his criminal history score. *See* U.S.S.G. § 4A1.2 n.11 ("If . . . at the time of revocation another sentence was imposed for a new criminal conviction, that conviction would be computed separately from the sentence imposed for the revocation.") Finally, "criminal history points are based on the sentence pronounced, not the length of time actually served." U.S.S.G. § 4A1.2 n.2 (citing U.S.S.G. § 4A1.2(b)(2) ("If part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended.")). Although Movant was given credit for time served on both of his 90-day sentences based on time he had already spent in custody, these sentences were not "suspended", as he claims.

The Court finds that the PSR was correct in assigning Movant two criminal history points for each prior DUI conviction under U.S.S.G. § 4A1.2(b). Counsel was therefore not deficient in failing to raise an objection to the calculation of Movant's criminal history score.

## IV.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c) (1)(A). Although Movant has not yet filed a notice of appeal, this Court nonetheless addresses whether he would be entitled to a certificate of appealability (COA). *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled

6

on would be repetitious.").

A certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). This standard requires a § 2255 movant to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. *United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (relying upon *Slack*, 529 U.S. at 483–84).

Based on the above standards, the Court concludes that Movant is not entitled to a COA—that is, reasonable jurists could not debate the Court's resolution of his claims.

## V.  Conclusion

For the foregoing reasons, the Government's motion for summary judgment (D.E. 93) is **GRANTED**, and Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (D.E. 81) is **DENIED**. Additionally, Movant is **DENIED** a Certificate of Appealability.

It is so **ORDERED**.

**SIGNED** this 13th day of July, 2015.

JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE

7